# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DONNIE MURHPEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 2:21-cv-00157 |
| | § | |
| STRIKE, LLC, | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Donnie Murphey files this Original Complaint against Defendant Strike, LLC, and shows as follows:

### PARTIES

1. The plaintiff is Donnie Murphey. He is an individual and resident of Nueces County, Texas.

2. The defendant is Strike, LLC ("the defendant"). It is a private corporation doing business in and located in Nueces County, Texas. The defendant may be served with process by personal service on its registered agent for service, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

### JURISDICTION

3. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  It presents a federal question because it arises under 29 U.S.C. § 2601, a federal statute.

## VENUE

4. Pursuant to 29 U.S.C. § 1132(e)(2), venue for this suit is proper in this district and division because it is the district and division where the alleged events occurred.

## FACTS

5. The defendant represents that it is headquartered in The Woodlands, Texas, and is one of the fastest growing privately-held pipeline, facilities, and energy infrastructure solutions providers in the country.   It further represents its delivers a full range of integrated engineering, construction, maintenance, integrity, and specialty services that span the entire oil and gas lifecycle.  The defendant operates in Corpus Christi, Texas, as Pickett Systems, located at 7619 Up River Road, Corpus Christi, Texas 78409.  Under the brand Pickett Systems, the defendant represents that it is an OEM manufacturer of skid mounted measurement and process systems for domestic, international, and offshore oil and gas industries. The defendant employees more than 50 persons within a 75-mile radius of the location where the plaintiff was employed by the defendant.

6. The plaintiff was employed by the defendant in Corpus Christi for nearly 12 years. He began as a welder's helper in 2008 and worked his way up to Welding Superintendent,

earning more than $102,000 annually in base salary.  The plaintiff was an employee of the defendant for the 12-month period prior to his discharge and worked more than 1,250 hours of service during that period.  He had no disciplinary history prior to his discharge.

7. After COVID-19 arrived in March 2020, working conditions changed for everyone, including the plaintiff.  For many reasons, including work but not only work and COVID-19 anxiety, the plaintiff experienced a severe bout of depression, which began in April 2020 or perhaps earlier.  On or about April 24, 2020, the plaintiff communicated to the defendant through Lonnie Finkhaus (District Manager) and Brenda Jurach (Human Resources), respectively, that he was unable to work because of his depression.  Initially, the plaintiff was given authorization to be off from work and/or to work from home intermittently, because of his serious medical condition and as a reasonable accommodation.

8. Further, on or about April 24, 2020, the plaintiff visited his physician, Keith Rose, M.D., who diagnosed him with depression, prescribed medication to him, and instructed him to not work and/or to work from home until May 7, 2020.  The plaintiff provided his doctor's instructions to the defendant.  In response, the defendant mailed FMLA paperwork to the plaintiff.

9. On or about April 27, 2020, the plaintiff complained in writing to the defendant about disability discrimination and/or interference with FMLA leave by Lonnie Finkhaus,

District Manager, because, in part, he was treating the plaintiff differently than others by, for example, making regular inquiries directly to the plaintiff about working in person instead of from home, despite his serious medical condition, temporary disability and reasonable accommodation and despite the fact that other employees of the defendant were working from home freely because of, at least in part, COIVD-19.  However, the plaintiff is aware of no investigation by the defendant of the plaintiff's complaint.

10.    On or about May 6, 2020, the plaintiff communicated to the defendant that he expected to return to work without restrictions on May 7, 2020.  However, in response to that communication, the plaintiff received a telephone call from Jocelyn Durfield, Vice President, Human Resources, in which she told him that he was being discharged from his employment because of alleged insubordination while he was working from home and/or on leave of absence.  The plaintiff denied the allegations of insubordination and believes, instead, that motivation for the discharge was his leave from work, temporary disability and/or perceived disability by the respondent, which prevented him for working a normal schedule between on or about April 24, 2020 and May 6, 2020.

11.    Following the unlawful discharge, the plaintiff filed a claim for unemployment benefits with the Texas Workforce Commission.  The defendant opposed the application for benefits and presented under-oath testimony to challenge the application during an oral hearing.   Despite the opposition, the Texas Workforce Commission awarded

unemployment benefits to the plaintiff, finding no evidence of work-connected misconduct by the plaintiff.

12. The administrative process through the EEOC was exhausted by the plaintiff before this suit was filed.

### CAUSES OF ACTION

**Count 1—FMLA Retaliation**

13. The plaintiff incorporates within Count 1 all of the allegations set forth in paragraphs 1-12, *supra*.

14. The Family and Medical Leave Act of 1993 allows eligible employees working for covered employers to take temporary leave for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition, without the risk of losing employment. 29 U.S.C. § 2601(b)(1) and (2). The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). The statute prescriptively provides a series of substantive rights. *See id.* The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position

of such employee." 29 U.S.C. § 2612(a)(1)(D); *see Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999).  When an eligible employee returns from leave taken under the FMLA, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1); *see Nero*, 167 F.3d at 925.4  The FMLA also contains proscriptions against penalizing an employee for the exercise of FMLA rights. 29 U.S.C. § 2615(a)(1)-(2); *see Chaffin*, 179 F.3d at 319.

15. The FMLA's general prohibitions on interference with rights and discrimination, 29 U.S.C. 2615, as well as the FMLA's enforcement provisions, 29 U.S.C. 2617, apply to the defendant.  Indeed, the defendant is clearly subject to the provisions of the FMLA.  The plaintiff is likewise eligible for the statutory job protection afforded by the FMLA.  Further, under the FMLA's general provisions, the plaintiff was on a leave of absence for a serious medical conditions in late April and early May 2020 because of physician-diagnosed depression.  This is a serious medical conditions that resulted in the plaintiff being intermittently unable to perform all the essential functions of his job with the defendant.

16. The leave period resulted in the plaintiff being intermittently away from work, unproductive to the defendant for approximately 2 weeks.  The day before he expected to return to work following the leave period, the plaintiff was discharged from his

employment by the defendant because of the leave of absence period.

17.     The defendant's conduct, clearly unlawful, caused damages to the plaintiff.  He therefore seeks reinstatement, to recover her past and future economic and non-economic damages from the defendant, his damages for mental anguish, and all other damages provided by law.  Because of the nature of the conduct; that is, being willful and intentional, the plaintiff also seeks to recover liquidated damages and/or exemplary damages from the defendant, as provided by law.  The plaintiff also seeks his costs and attorney's fees, as provided by law.

### Count 2—Disability Discrimination

18.     The plaintiff incorporates within Count 2 all of the allegations set forth in paragraphs 1-17, *supra*.

19.     The plaintiff alleges that he had a temporary disability and that it is this condition that was a motivating factor in the defendant's decision to discharge him from his employment.  The plaintiff alleges that he was qualified and capable of performing his job duties intermittently during the period of his temporary disability, which is a reasonable accommodation.

20.     The plaintiff alleges that the disability discrimination was knowingly done and/or intentionally done and/or recklessly by the defendant and/or was a motivating factor in the defendant's decision to discharge him from his employment with the defendant.

21.     The defendant's conduct caused damages to the plaintiff.  He therefore seeks to recover his economic and non-economic damages from the defendant by this suit.  Because of the nature of the conduct, the plaintiff also seeks to recover exemplary damages from the defendant, as provided by law, and all of his costs and attorney's fees incurred in this matter, as provided by law.

### Count 3-–Retaliation

22.     The plaintiff incorporates within Count 3 all of the allegations set forth in paragraphs 1-21, *supra*.

23.     The plaintiff made a complaint to the defendant, complaining about disability discrimination.

24.     In response to the complaint, the defendant retaliated against the plaintiff by making his working conditions worse, ignoring and/or revoking his reasonable accommodation, and ultimately discharging him from his employment.  Retaliation is an unlawful employment practice.

25.     The plaintiff alleges that the retaliation was knowingly done and/or intentionally done and/or recklessly by the defendant.

26.     The defendant's conduct caused damages to the plaintiff.  He therefore seeks to recover his economic damages from the defendant by this suit.  Because of the nature of the conduct, the plaintiff also seeks to recover exemplary damages from the defendant, as

provided by law.

27.  As provided by law, the plaintiff also seeks to recover all of his costs and attorney's fees incurred in this matter.

### PRAYER

28.  For these reasons, Plaintiff Donnie Murphey respectfully requests that Defendant Strike, LLC, be cited to appear herein and answer, and that upon trial of this matter, have judgment against Defendant for Plaintiff's reinstatement, damages, economic damages, non-economic damages, liquidated damages, mental anguish damages, exemplary damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and for such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

s/Jon D. Brooks
Jon D. Brooks
Attorney-in-Charge
Federal ID 24936
State Bar No. 24004563
400 Mann Street, Suite 1001
Corpus Christi, Texas 78401
361.885.7710
361.885.7716 (facsimile)
jbrooks@brooksllp.com

**Attorneys for Plaintiff Donnie Murphey**